UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| TERRI MESSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 13-086-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Terri Messer ("Messer" or "the Claimant") was involved in an accident in December 2009, resulting in a broken leg. Even before the accident, Messer suffered from several impairments which limited her ability to be gainfully employed. In June 2010, Messer filed an application for supplemental security income under the relevant provisions of the Social Security Act. After her administrative claim was rejected, Messer filed the current action, claiming that the decision to deny her SSI benefits was erroneous.

The matter is currently pending for consideration of cross-motions for summary judgment filed by Messer and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 14 and 15] Messer argues that the administrative law judge ("ALJ") assigned to her case erred by discounting the severity of two impairments. Additionally, she asserts that the ALJ was biased against her. As a result, Messer seeks reversal of the ALJ's decision and an award of benefits. Alternatively, she requests remand for further

consideration of her claims. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Messer.

# I.

On June 16, 2010, Messer applied for Supplemental Security Income ("SSI") under Title XVI of the Act. [*See* Administrative Transcript, pp.142-43; hereafter, "Tr."] She alleges a disability beginning July 1, 2000. Messer's application was denied initially and upon reconsideration. [Tr., p. 60-90] On March 16, 2012, a hearing was held before ALJ Ronald M. Kayser in Hazard, Kentucky.[1] [*Id*., pp. 29-59] Messer appeared and testified, represented by attorney Lucinda Cornett. [*Id*., p. 13, 29] Impartial vocational expert ("VE") Tina Stambaugh also testified at the hearing via telephone. [*Id*., pp. 32, 54-58]

Messer was fifty-three years old at the time of the ALJ's decision. She has completed two years of college and has past work experience as a substitute teacher. [Tr., p. 34, 54-55, 157] While teaching duties would normally be classified as skilled, Messer described her past job responsibilities as a "glorified babysitter." [Tr., p. 36] As a result, her past work was classified by the VE as semi-skilled. [Tr., p. 55] Messer claims to be disabled under the Act due to obesity, bipolar disorder, severe pain in her left leg resulting from the above-referenced automobile accident, migraine headaches, and seizures. After reviewing the record and testimony presented during the administrative hearing, the ALJ concluded that Messer suffered

---

1  While the transcript indicates the administrative hearing was held in Lexington, Kentucky, the ALJ's Decision indicates that the hearing was held in Hazard, Kentucky. Additionally, the Claimant's testimony indicates that the hearing was held in Hazard. [Tr., p. 48]

from the severe impairments of affective mood disorder, seizure disorder, morbid obesity, and a fracture of the left tibia (status post open reduction internal fixation in December 2009). However, he did not conclude that the migraine headaches Messer claimed to suffer constituted a severe impairment under the applicable regulations. [Tr., p. 15-18]

Notwithstanding her impairments, the ALJ determined that Messer maintained the residual functional capacity ("RFC") to perform medium work, subject to the following limitations:

> [Messer] has the [RFC] to perform medium work as defined in 20 CFR 416.967(c) except that the claimant can lift 50 pounds occasionally and 25 pounds frequently; can stand and walk six hours in an eight hour workday; can sit six hours in an eight hour workday; no restrictions on pushing and pulling; should not climb ropes, scaffolds, and ladders; can frequently climb ramps and stairs; and the claimant should not work around dangerous machinery or unprotected heights. The claimant has moderate vs marked limitations in her ability to understand, remember, and carry out detailed instructions; work in coordination within proximity of others without being distracting by them or exhibiting behavioral extremes; and respond appropriately to changes in work setting. The claimant retains the ability to perform the requirements of basic unskilled work including the ability to remember, understand, and carry out simple and some detailed instructions and procedures requiring brief initial learning periods; can sustain concentration, effort, and pace for simple tasks requiring little independent judgment and involving minimal variations and doing so at requisite schedules of work and breaks; can interact frequently as needed with supervisors and peers and sufficiently for task completion, yet requiring no more than occasional interaction with the public; and the claimant can adapt adequately to situational conditions and changes with reasonable support and structure.

[Tr., p. 18]

Based on the testimony of VE Stambaugh, the ALJ determined that Messer could not perform past relevant work. [Tr., p. 23] However, after considering the Claimant's age, education, work experience and RFC, he found that she could perform other work that exists in significant numbers in the national economy, such as warehouse worker, general factory helper,

and order filler. Additionally, the ALJ determined that Messer could perform clerical work, notwithstanding all of her physical and mental limitations, restrictions and impairments. [Tr., p. 24] Based on these findings, the ALJ concluded that Messer was not disabled under the Social Security Act. As a result, Messer was denied SSI benefits. [Tr., p. 24]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC

and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

### III.

Messer asserts that this matter should be reversed or remanded for further consideration for three reasons. First, she contends that ALJ Kayser failed to include migraine headaches as a severe impairment. Thus, she contends that the ALJ erred at the second step of the sequential evaluation process. Second, Messer argues that the ALJ erred in concluding that she has effective ambulation when, in fact, she does not. And finally, Messer alleges that ALJ Kayser was biased toward her. However, having reviewed the administrative record, the Court concludes that none of Messer's arguments have merit. Instead, the defendant's Decision is supported by substantial evidence.

**A.     The ALJ Did Not Err In Assessing Messer's Migraine Headaches.**

Messer's medical records indicate that, prior to suffering a broken leg on December 23, 2009, her primary care physician (Dr. Sandlin) was prescribing narcotic pain medication for migraine headaches. However, her prescription for hydrocodone was discontinued on or about

December 15, 2009, following Dr. Sandlin's death. The treatment notes of Dr. Van S. Breeding dated December 15, 2009, indicate the following:

> Due to the untimely passing of Dr. Sandlin, today's visit was to inform the patient that chronic pain and nerve conditions will no longer be treated at the Leatherwood/Blackey Clinic. Chronic pain and nerve medications will be refilled for a thirty (30) day period and appropriate referral will be made to chronic pain and nerve treatment centers for follow up care on these conditions.

[Tr., p. 299] Following the December 23, 2009 accident, Messer received a prescription for 60 Lorcet tablets (hydrocodone) by Dr. Shane McDougal on January 21, 2010. [*Id.*] On February 9, 2010, she was referred to Kentucky Pain Management to address her complaints of pain. The appointment was scheduled for March 2, 2010; however, there is no indication that Messer kept the appointment. [Tr., pp. 304, 306]

Messer contends that ALJ Kayser failed to accurately assess limitation caused by her frequent migraine headaches. [Record No. 14, pp. 8-10] She asserts that Social Security Ruling 96-8p requires that the ALJ consider the impact of both severe and non-severe impairments on her ability to work. She argues that the ALJ failed to consider the fact that her migraines were so frequent (approximately twice per week) and severe (requiring her to lie down, cover her eyes and take extra-strength Tylenol) that they prevented her from performing past work or other jobs identified by the VE.

Contrary to Messer's claim, the record demonstrates that the ALJ properly considered work limitations caused by headaches and seizures. As discussed at page 9 of his Decision, the ALJ found that Messer's claimed limitations relating to seizures and headaches were overstated and not supported by the medical evidence presented for his review and consideration. [Tr., p. 21] After reviewing the Messer's treatment history for these conditions, he concluded:

> [w]hile the claimant alleges frequent occurrences of both problems with symptoms that leave her unable to function, the record does not support this level of limitation. For example, no physician has recommended a MRI or CT scan of the claimant's brain in order to determine a cause of the headaches and seizures. Failure to take these measures indicates that the claimant's headaches and seizures are not as severe as she alleges. Additionally, the fact that there is no record of an emergency room admission due to seizure behavior undermines the claimant's allegations because if she experienced seizures of the magnitude alleged, she would need medical treatment. Finally, the claimant's actions undermine her allegations. For example, the claimant testified that she drives an automobile. If the claimant experienced migraines and seizures as frequently as she alleges, it would not be prudent to drive a car. Considering this evidence, the Administrative Law Judge finds that the claimant's limitations due to seizures and migraine headaches have been adequately accounted for by limiting the claimant's exposure to dangerous heights and machinery.

[Tr., 21]

In March 2010, Messer was treated by neurologist Chandrashekar Krishnawamy, M.D., who prescribed non-narcotic Topamax and Tylenol for headaches. [Tr., p. 221-23] However, she did not return for follow-up treatment nor did she receive treatment from other physicians for this condition. Likewise, she did not receive treatment at other clinics or emergency rooms. As the Commissioner correctly notes in her supporting memorandum, the fact that the ALJ did not find this impairment "severe" in not relevant where, as here, he properly considered all impairments – including migraine headaches – in evaluating her ability to work. *McGlothin v. Comm'r of Soc. Sec.*, No. 07-4355, 2008 U.S. App. LEXIS 22651, at **17 (6th Cir. 2008) ("Step two is 'a de minimis hurdle' that a claimant clears unless the impairment is only 'a slight abnormality that minimally affects work ability.'" . . . . "However, once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps.") Messer did not demonstrate that this particular impairment, alone or in

combination with other impairments, limits her ability to work beyond the limitations found by the ALJ.

At page 10 of his decision, the ALJ concluded that Messer's testimony was not fully credible. In reaching this determination, he noted that

> the medical evidence and medical opinions do not support the claimant's allegations of disability. The claimant's allegations are also undermined by her testimony and her daily activities. In regards to her testimony, the Administrative Law Judge asked why she was not receiving treatment on her left knee. The claimant responded that she could not afford treatment; however, the claimant testified that she received $50,000 in a lawsuit regarding her knee. Finally, the claimant's testimony that she is able to perform activities such as use a computer, grocery shop, care for her pets, read books, and quilt strongly indicates that the claimant is capable of performing at least simple work activity.

[Tr., p. 22]

Credibility determinations regarding a claimant's subjective complaints of symptoms rest with the Commissioner. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is in a unique position and has a duty to "observe the claimant and judge her subjective complaints," *Buxton*, 246 F.3d at 773, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence" and "testimony concerning . . . symptoms and limitations [that] is not supported by the evidence of record and is deemed not fully credible." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 669-70 (6th Cir. 2009). Because the ALJ properly stated his reasons for determining that Messer was not fully credible, and because substantial weight supports this determination, the Court defers to ALJ Kayser's findings regarding Messer's credibility.

A review of the transcript of Messer's testimony during the March 16, 2012, administrative hearing indicates that the Claimant attempted to minimize her ability to perform the various tasks identified by the ALJ. However, the timing of Messer's receipt of the $50,000 settlement further supports the ALJ's conclusions. Messer was referred to a pain clinic in December 2009 before the automobile accident that caused her leg injury. Prior to the accident, she was taking hydrocodone for migraine headaches and generalized claims of pain. Narcotic pain medication was continued as a result of the accident. However, in early 2010, physician notes indicate that she had not been seen by the pain clinic due to lack of funds and/or insurance. At some later time but prior to the March 16, 2012, administrative hearing, Messer receive a settlement relating to the auto accident totaling $50,000. It is logical to conclude that Messer would have used a portion of the settlement to obtain pain treatment if the pain she was experiencing (either from migraine headaches or from her leg injury) was as severe as she alleged.

In light of: (i) the lack of medical evidence supporting her assertions, (ii) the other activities in which Messer was engaged which conflicted with her assertions, and (iii) the ALJ's finding regarding Messer's credibility, the Court cannot conclude that the ALJ's finding regarding this issue is erroneous.

    **B.**    **The ALJ Did Not Err In Finding That Messer Had Effective Ambulation In Connection With Her Broken Leg.**

On December 23, 2009, Messer was standing near her vehicle which had broken down. As another driver was returning to assist Messer, that driver's vehicle was rear-ended. Messer suffered a broken leg when struck by the assisting driver's vehicle. Hospital records indicate that

Messer's left leg fracture was surgically repaired on December 24, 2009. Progress notes indicate that, on January 11, 2010, her surgeon recommended that she remain non-weight bearing but commence muscle rehabilitation. [Tr., 281] By February 22, 2010, the surgical incision had healed, but remained tender. And while Messer's range of motion remained restricted, she was advised to do muscle exercises without a brace. [Tr., 282]

Messer continued to improve following the accident. Progress notes dated May 6, 2010, indicate that the fracture had "healed well" and that the surgical implants were "holding well." Additional Lortab was prescribed related to the injury. Further, Messer was instructed to "discard the brace and use the cane" as part of her continuing rehabilitation following the leg injury. [Tr., p. 284] Although the Claimant was directed to return in three months, there is no indication that she complied with this instruction.

Messer claims that the ALJ's finding that she could "effectively ambulate" is erroneous. According to her attorney, while the medical records indicate that Messer originally needed a knee brace, a walker, and later a cane, there in no indication that her treating physician found that she did not need some type of assistance to walk. While counsel fails to address Messer's failure to return to her treating physician following the May 2010 visit as instructed, he claims that the ALJ violated 20 C.F.R. 404 App. 1 1.00 B 2 which states that, to ambulate effectively, an individual must be capable of:

> sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. . . . Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces . . . inability to climb a few steps at a reasonable pace.

[Record No. 14-1, p. 10] *See* 20 C.F.R. § 404, Appendix 1, Sec. 1.00 b.(2).

Regarding this issue, ALJ Kayser quoted from Dr. Sharma's notes which indicated that, by May 2010, Messer had improved to the point that she had the ability to ambulate with only a cane. Further, the lack of further any further treatment of this injury following May 2010 supports that ALJ's conclusion regarding Messer's ability to effectively move about with limited assistance. And as ALJ Kayser noted in his Decision, evidence in the record indicates that Messer performed a number of activities that required ambulation. Messer did not use an assistive device during her August 2010 psychological evaluation, although she was observed to walk with a limp. [Tr., p. 312] Messer visited her primary care physician, Dr. Shane McDougal, on May 18, 2010. [Tr., p. 291] The treatment notes from that date do not indicate any problems relating to Messer's leg injury. In March 2011, Messser sought medication refills and reported that she was not "feeling well." However, there is no mention of leg pain or ambulatory problems associated with the 2009 injury. [Tr., p. 379] And treatment records for the remainder of 2011 through February 2012 do not reflect complaints of leg pain or the use of assistive devices for ambulation.

The Court agrees with the Commissioner that, although Messer required assistive devices while she was recovering from her leg injury, the record demonstrates that he condition was not of disabling severity for the requisite twelve-month period. *See* 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. §§ 416.905, 416.909; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (claimant's impairments and inability to work must last for a continuous period of at least twelve months); *Allison v. Comm'r of Soc. Sec.*, 108 F.3d 1376 (table), 1997 U.S. App. LEXIS 10295, at \*6 (6th Cir. 1997) ( the relevant inquiry is "whether [the claimant] was disabled for any continuous

period of twelve months or more from the time fo his first surgery until the end of the recovery period . . ."); *Robinson v. Sec'y of Health and Human Servs.*, 899 F.2d 1222 (table), 1990 U.S. App. LEXIS 5392 (6th Cir. 1990) (RFC for medium work supported by substantial evidence where evidence demonstrated that the claimant had "almost fully recovered within twelve months of his injury").

### C. Messer's Claim of Bias Is Without Merit.

Messer asserts that the ALJ was biased because he allegedly questioned her about "unrelated issues" and by "not fully stating the facts" in his Decision. [Record No. 14, p. 11-12] More specifically, Messer contends that it was improper for the ALJ to ask her about her husband's disability, her receipt of food stamps, and the amount she received as settlement of her claims resulting from the December 2009 auto accident. Regarding the amount received in settlement, Messer claims that the ALJ was biased because he failed to acknowledge that the money received in settlement had been used to purchase a home and was unavailable to use for other purposes (such as to pay for medical treatment). Messer's claims of bias are totally without merit.

First, the ALJ was not required to accept Messer's explanation for her use of $50,000 absent further proof. And as the Commissioner correctly notes in her supporting memorandum, the ALJ's questions regarding the receipt of food stamps and her husband's disability payments were relevant to the issues presented. 42 U.S.C. §§ 1382(a), 1382a(a)(2)(A), 1382b; 20 C.F.R. § 416.1104 ("In some situations we must consider the income of certain people with whom you live as available to you and part of your income."). Likewise, in light of Messer's claim that she did not have the ability to pay for treatment from pain clinics following her injury in 2009, the

amount subsequently received in settlement as well as the disposition of the funds from the settlement constitute highly relevant inquiries. *See* 42 U.S.C. § 1382; *McKnight v. Sullivan*, 972 F.2d 241, 242 (6th Cir. 1990).

While an ALJ "is not required to be polite," the record does not demonstrate that ALJ Kayser was impolite or demeaning on any way. Based on a "cold review" of the transcript of the administrative hearing, it is wrong for Messer's attorney to suggest otherwise. And with respect to this issue, the Court also notes that Messer was represented by counsel during the March 16, 2012 administrative hearing. If the ALJ had been discourteous or had asked improper or irrelevant questions, surely Messer's attorney, Lucinda Cornett, would have objected. The record demonstrates that she did not.

> **D.     Substantial Evidence Supports The ALJ's Decision That Messer Is Not Disabled Under The Social Security Act.**

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also

supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In the present case, ALJ Kayer determined that Messer has several severe impairments (*i.e.*, mood disorder, seizure disorder, morbid obesity, and a fracture fo the left tibia). However, he concluded that these disorders, either singularly or in combination, did not prevent the Claimant from performing work that exists in the national and regional economies. In reaching this determination, the ALJ first concluded that Messer's impairments did not meet or equal the severity of one of the listed impairments identified in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. 416.920(d), 416.925 and 416.926.

Regarding the injury Messer suffered during the December 2009 automobile accident, the ALJ quoted relevant medical records of Dr. Mukut Sharma which indicated that, by April 2010, her fracture had "healed well with full extension and flexion." [Tr., 15] Further, Messer demonstrated good stability with normal quadriceps muscles by that date. Dr. Sharma recommended that Messer use a knee brace and walker, but she was fully weight bearing.

By May 2010, Dr. Sharma recommended that Messer discontinue use of the brace and use a cane instead. She did not return for further treatment beyond this date. [*Id.*] And as the ALJ noted later in his Decision, Messer was able to engage in activities after these dates which require ambulation. [*Id.*] The fact that she did not use any portion of a subsequent settlement for additional treatment or rehabilitation also supports the ALJ's conclusion regarding Messer's

ability to ambulate effectively following treatment for the injury and the limitations he assigned to her RFC as a result of the injury

The medical evidence of record also supports the ALJ's findings regarding the limitations resulting from the Claimant's obesity and seizure disorder. As ALJ Kayser correctly noted, while obesity is not a listed impairment, it must be considered because it has the potential to cause or contribute to other impairments. It is itself a risk factor that increases the chances of developing impairments (physical and mental) in most body systems. [*Id.*, p. 16-17] However, which the ALJ found that the Claimant was morbidly obese (five feet, two inches tall and weighing 331 pounds; body mass index of 60.5), no medical evidence was presented that she experienced sleep apnea, diabetes or fatigue. In short, the Court cannot conclude that the ALJ erred in concluding that Messer's resulting limitations "are adequately accounted for by proscribing the claimant from work environments with dangerous heights and machinery as well as restricting climbing of ramps, stairs, ropes, scaffolds, and ladders."

Likewise, substantial evidence supports the ALJ's findings and conclusions regarding seizure disorders. The medical records do not demonstrate a typical seizure pattern suffered by Messer. Further, there are no CT scans or MRIs of the head to show brain abnormalities. And there is no evidence of hospitalization after Messer allegedly experienced seizures. Instead, the records indicate that the seizure activity alleged by Messer was adequately treated with medication (Tegretol). Further, Messer stated that the frequency of seizure activity decreased with this medication. [Tr., p. 313] As summarized at page 9 of the ALJ's decision, while Messer claimed that the frequency of headaches and seizures left her unable function, the medical

records do not support the level of limitation she claimed. [Tr., p. 21]  Again, substantial evidence supports this determination.

ALJ Kayser also addressed Messer's claimed mood disorder and its affect on her ability to function effectively.  While Messer demonstrated mild restrictions in activities of daily living, moderate difficulties regarding social functioning, and moderate difficulties regarding concentration, persistence and pace, these impairments did not satisfy either the paragraph B or C criteria  [*Id.*, p. 17-18] In addition to the Claimant's medical records, the consultative examination preformed by William Rigby, Ph.D., supports the ALJ's determination regarding this issue.[2]  In short, medical and other evidence support the RFC determination by the ALJ.

The Court also notes that the RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 404.1520(a)(4) (outlining the five-step sequential evaluation process used to ascertain whether a claimant is disabled). *See also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner.").  In making an RFC determination, an ALJ must consider the medical evidence, non-medical evidence, and the claimant's credibility.  *See* 20 C.F.R. §§ 404.1545(a)(1), (3) and 404.1546(c).  Here, the ALJ did not err in considering the effect of Messer's mental or physical conditions on her ability to work.

---

2      The Claimant's attorney sent Messer for a second consultative examination in February 2012.  This examination was performed by Leigh Ann Ford, Ph.D., and indicated that Messer generalized anxiety disorder and depressive disorder were more severe than indicated by Rigby.  Ford's report is addressed at page 20 of the ALJ's Decision.  After considering the report, ALJ Kayser concluded that Ford's opinions were not supported by the record as a whole.  Without repeating his reasoning, substantial evidence supports the ALJ's determination. [Tr., p. 20-21]

Likewise, the Court finds no error in the hypothetical questions posed to the Vocational Expert. It is well-established that a hypothetical question posed to a vocational expert "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2002)). The vocational expert's testimony relies on the ALJ's assessment of what the claimant "can or cannot do." *Id.* Additionally, the ALJ is permitted to rely on the vocational expert's answer to a hypothetical question only to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The answers to these questions are substantial evidence "only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id*.

Here, the ALJ properly described the limitations that were supported in the record. He posed a hypothetical describing the Claimant's age, education, and work experience, and further described her physical and mental limitations. [Tr., p. 54-59] VE Stambaugh testified that past work would be precluded by such an individual, but that other work would fit the Claimant's profile, such as warehouse worker and general factory helper at the medium level, unskilled level and general clerical worker and order filler at the unskilled, light level. [Tr., p. 56-57] The vocational expert testified that these positions exist in significant numbers in the national and regional economies. [*Id.*]

ALJ Kayser relied on the objective medical evidence of record, Messer's subjective complaints, and his determinations regarding Messer's credibility when posing hypothetical questions to the vocational expert. As outlined above, his findings regarding Messer's RFC and

credibility are supported by substantial evidence. Accordingly, the questions he posed to the vocational expert and her responses constitute substantial evidence in support of the determination that Messer could perform other work existing in significant numbers in the national economy.

## IV.

Although Messer suffers from some impairments, she has not established that her impairments, either singularly or in combination, are severe enough to warrant an award of Social Security Income. Further, the ALJ did not err in his evaluation of the evidence. Viewing the record as a whole, substantial evidence supports ALJ Kayser's determination that Messer is not disabled as that term is defined by the Social Security Act. Accordingly, it is hereby

**ORDERED** as follows:

(1)  Plaintiff Terri Messer's Motion for Summary Judgment [Record No. 14] is **DENIED**.

(2)  Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

(3)  The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 14th day of April, 2014.

